Next case called for oral argument is Sherrill Associates v. GASA Leasing, Inc. Counsel, whenever you're ready, you may proceed. Thank you, Your Honor. May it please the Court, Counsel. My name is Thomas Magg and I represent the defendant in this case, GASA Leasing, Inc. This is a rather simple, straightforward breach of contract case up here on the issue of whether or not summary judgment was appropriate to be entered in this case. It is the defendant's position that summary judgment was inappropriate as there are genuine issues of material fact in dispute. Is this a breach of contract case? Yes. I thought it was just an action on account. As near as I can tell, it's a collection case, no doubt about it. It appears that the substantive elements that were pled are breach of contract. The count itself was a title action on account, yes. The briefing before this Court appears to be in agreement that what is pled isn't a breach of contract. The breach is failure to pay. The alleged breach is failure to pay. Correct. Okay. Of course, as this Court is very well aware, if there's a genuine issue of material fact in dispute, summary judgment is inappropriate. Substantial performance is a fact issue for the jury to decide. Defendant GASA Leasing denies that substantial performance took place. Specifically, Cheryl, the plaintiff in this case, claims repeatedly that it performed and completed the services. Defendant GASA Leasing, in several affidavits, has disputed that and specifically has disputed that the final plat was prepared or that the meetings with the City of Collinsville necessary to approve the final plat took place. It's a written contract. It is a written contract. Where in the written contract does the contract state that Cheryl doesn't get paid until those things occur? What the contract itself says is that there are various items to be performed, A through F of relevant interest in this case. The contract does indeed state that work and payments are to be somewhat performed roughly at the same time. Well, it says invoices will be submitted monthly. Based on actual hours performed by our personnel during that billing period, payment will be due upon receipt of invoicing. That is what the contract says. What the complaint, what the pleading itself actually says is that all of the work was performed. That's what the complaint says. Well, isn't that saying the work was performed for the invoicing that they're claiming in the complaint? No. What that's saying is that all of the work in items A through F were performed, and that's simply not true. There are affidavits in the record expressly state that items A through F was not completed. And two of those items are specifically called out by name. The issue of whether the items A through F of the work should have been performed and paid at the same time was in count two of the first amended complaint. Okay. So let me ask you another question. Sure. I haven't given you much chance to make your argument here, and I will, I promise. But so your position is that they had to keep working, even though your client wasn't paying, and complete all the work, A through F, before they could collect anything? I think the record reflects that my client actually was making many payments, and many payments were actually made. I think what I understood was the first few months payments were made, but then months had gone by with no payments made before the suit was filed. I believe that's probably correct, and the reason that no payments were made is because the work wasn't being performed. Okay. So let me get back to the question I had. You know, if it specifically says they bill monthly and it's due upon receipt, your position is they had to finish before your client had to pay. Is there anything in the contract that says that? In the contract itself, is there anything that expressly says that, just that way you ask the question? No. Okay. What the contract says is this is the estimated total charge. We will bill as we do the work. Based on that, the plaintiff filed a two-count complaint. Count two says that we performed the work and were not paid as it became due. Count two was dismissed with prejudice, and that dismissal was not appealed. That's the quantum merit count. That's the quantum merit, which is basically the pay as you go. We performed this work. Pay for what we performed. Count one pled unequivocally, clearly in paragraph five. Between February 1, 2008, and September 30, 2009, Cheryl provided and completed the services described in the agreement to the defendant. That's in the record at C-88, paragraph five of the first amendment complaint. It doesn't say we performed some services, billed for it, and weren't paid for what we billed. It says they provided and completed the services described in the agreement. That's simply not true. The defendant, or the plaintiff in this case, undertook to plead a specific fact, a fact which wasn't true and was denied repeatedly under oath, both in a verified answer and in affidavit form. And the plaintiff sought summary judgment, not on what to plead, but on their interpretation of the contract, which follows the questions that Your Honor was asking. If the plaintiff wants to plead that they provided the services described in the agreement and completed them, they should be held to the standard that they pled. If they wanted to plead that they provided some services, invoiced it, and were not paid for that, they could have done that, but they chose not. Why couldn't the trial court have looked at everything on file, all pleadings, affidavits, et cetera, on file, and determined that there was no genuine issue of material fact that your client owed what had been invoiced up to that point, which is what they claimed? That would require the trial court to, in essence, become an advocate for the plaintiff and say, And I'm going to, on my own motion, without notice to anybody, amend the pleading for you and not let the defendant submit evidence concerning this new amended pleading that I on my own decided to enact and enter summary judgment against you. A plaintiff is the master of their own complaint. It's not the job of the court to amend a complaint to comport with what the plaintiff should have pled. Well, you're arguing your interpretation of the complaint. And I mean, you know, no player in the complaint did they allege that they completed everything A through F. They said they completed what they needed to do to collect the amount they were claiming, or at least that's an interpretation. What they pled was, quote, paragraph 5, C-88 in the record, paragraph 5. Not in the appendix. Either of you bothered to put the complaint in the appendix or the contract, which would have been helpful? I don't believe that I had an appendix, no. Okay. But the First Amendment might plead between February 1, 2008 and September 30, 2009, Cheryl provided and completed the services described in the agreement to the defendant. That's what it pleads. That is denied. It doesn't say everything in the contract. It says the services that they're claiming. I mean, it's a fair interpretation of it, isn't it? It doesn't say provided they completed certain of the services and then invoiced the defendant and then the defendant didn't pay. That's not what they plead. What they plead is they did the job. And that's simply not true. And that is the crux of the appeal, is that whichever interpretation of the contract the court chooses to apply, on the summary judgment standard you strictly support the entire record against the moving party on summary judgment. Construing the complaint in the light most favorable to the defendant in this case, the plaintiff pleads a fact that is demonstrably not true. Because when it is construed in the light most favorable to the defendant, the non-moving party, a jury may well agree with what the circuit court did in this case. A jury may well rule in the plaintiff's favor in this case, but it's up to the jury to decide that fact. Substantial performance is a fact question for the jury. The plaintiff pleaded that they provided and completed the services. There's an issue of fact under oath repeatedly that says that's simply not true. Because there's an issue of material fact in dispute, whether or not the plaintiff provided and completed the services, as pled by the plaintiff in their first admitted complaint, Count 1, again in the record it's C88 paragraph 5, this court must reverse the summary judgment order and send it back to the trial court for trial and let the jury decide is the plaintiff right or is the defendant right. It's a jury question. And for that reason, above all others, I ask that this court reverse and revamp the summary judgment order and send this case back for trial. Thank you, Your Honors. Thank you. Counsel? Thank you, Your Honors. May I please report, counsel? My name is Jamie Major, and I represent the plaintiff and appellee, Sherrill Associates Incorporated, in this matter. No one disputes the fact that this is a breach of contract action, that there was a contract to begin with. It was signed in January 2008. What the dispute is as to what the terms of that contract mean, and Your Honor sort of hit the nail on the head in terms of what the contract does mean, very clearly sets forth that Sherrill Associates provides engineering and surveying services, that it bills hourly for the work that is actually performed. The summary of services, A through F, are just a general, you know, topical summary of the types of services that Sherrill Associates could provide throughout the course of the relationship between Sherrill and GASA. If you look at the contract, and I'll point you to C-32 to begin with, the contract is in there several times, but in the record for the first time, it begins on page C-32. The summary of services, just for an example, C-2, agency submittal to the Illinois Historic Preservation Agency. Now, I think everyone could agree, without having any knowledge of engineering and surveying work, that there doesn't need to be consultation with the historical society for every single project. But if issues of historical significance were to be raised throughout the course of a project, that would be the type of service that Sherrill Associates would provide. And the summary of those services is set forth under estimate number one. The total of that is $47,500. Again, that's an estimate of the types of services that would be provided under A through F. No one disputes that none of the services under letter G, construction services, were performed. None of those services were performed because the project didn't go forward. GASA leasing did not move forward with the construction phase of this project. The project was a 39, give or take, lot residential subdivision in Collinsville, Illinois, for single family homes. They didn't construct that, so there were no construction services performed by Sherrill. That's under estimate number two, and that would have been $14,500. None of those services were invoiced for. And the invoices have been provided. It's in the record, starting on page C-151. These are the invoices that are unpaid. And Mr. Mack was incorrect that the services were not being provided, and that's why they stopped paying. That's just not in the record, quite obviously. Nowhere in the record does GASA leasing dispute that these services were provided. Nowhere in the record does GASA leasing allege that they paid any of these invoices. In fact, the invoices that were paid were between February and September of October 2008. These start in November 2008, and they continue on. Each one of the invoices lists the specific employee, the hourly rate, the number of hours, and the total amount of money that is being invoiced for this particular invoice. And most of them are quite detailed in terms of what types of work is being performed on that given month. Begin sign of culvert channeling creek underground. Offsite runoff evaluation. Drainage area and boundaries. Pre-developed site storm drainage areas and coverage. Revised sanitary sewer route atop of hill. Revised sewer process. This is the kind of work that Cheryl was continuing to do throughout these months. Now, why did Cheryl keep on performing this work if they weren't being paid? They were getting information from GASA. We're going to pay you. We're going to pay you. And that's in an affidavit? Yes, it is. I can't remember who, but it's the owner of Cheryl. Correct. But regardless of that, it's irrelevant as to whether or not GASA made those statements. That doesn't matter. Those are not facts that are, they might be facts that are in dispute because they were just set forth in an affidavit by my client and they weren't actually challenged in any affidavit by Mr. Mack's client. But it doesn't matter. The clear and ambiguous terms of the contract, and by Illinois law, if the terms are clear and ambiguous, that's it. That's the end of the legal argument. The clear and ambiguous terms of the contract state, will be submitted monthly based on the actual hours performed by our personnel during that billing period, and then they're due within the 30-day cycle. Would you agree that it would have been clearer if you would have alleged that in your complaint, that this was a monthly pay? I mean, you did attach the contract after a motion to dismiss because you didn't attach the contract, right? Correct, correct. And on the initial pleading stage, it wasn't clear whether or not, these two businesses do a lot of work together, and it wasn't clear whether or not this was one of the projects that they had memorialized via contract. That's why the initial complaint didn't include that. During the course of the litigation at the beginning, this was the first time I've ever dealt with this client before, we uncovered the contract and I amended the complaint. I did not include the word, some services. That's the only thing that I have not done that is even worthy of an argument in front of the appellate court. But you incorporated the contract by reference into the complaint. Absolutely, absolutely. And it does, the complaint does allege that the services were performed in voice for and then not paid. The contract is very clear as to how things are to be completed. So, it doesn't say some, it also doesn't say all. And therein lies the fundamental dispute between the parties set forth in the answer that CASA did provide. It denied that Sherrill fulfilled all of its obligations to defendants by providing the required services and providing invoices evidencing the charges of said services. Now, that doesn't say all, but it also doesn't say some. My interpretation and the reason why I didn't amend a second time is because Judge Chapman, in his wisdom, interpreted the contract to mean some of the services. That was part of the discussion at summary judgment oral argument. I didn't amend the complaint. I don't think that I should have to. My interpretation was that my client performed services as set forth in the contract and invoice for them. So, the answer that CASA leasing provided is very exemplary of what the dispute is here. The answer is denied. Further states that plaintiff has not completed the project and Collinsville has still not approved the work. Nowhere in the contract does it say Sherrill Associates has to complete this project before you're paid a dime. And nowhere in this contract does it say the city of Collinsville has to approve this project before you're paid a dime. Because, quite frankly, that's not how engineering and surveying contracts work. And as set forth in affidavit by my client who has been working in the engineering and surveying business for 30 plus years, the industry standard is for the engineers to get paid hourly for monthly work, for hours actually performed. Because there are many times, I'm sure, that we can all envision times when a project doesn't move forward, a builder loses funding, decides to concentrate on a different project that might have suddenly seemed more lucrative. There's a hundred reasons that this could happen. That doesn't mean that the engineer doesn't get paid. It doesn't mean that the engineer doesn't get paid for months' worth of work that they have been doing an invoice for. That's not what that means. If it did, then there wouldn't be an engineering industry. And, quite frankly, my client would not be able to do work. So I don't think that that's what GASA understood the contract to mean because they, quite obviously, paid invoices that looked exactly like this for months and months and then stopped paying them. They knew what the contract was. And I'm surprised that the argument by the appellate here today is just a question of whether or not in the complaint the word all or some should or should not have been inserted. When it's very clear from the record, it's very clear from the oral argument in front of the arbitration panel that rendered decision for $50,000 in favor of my client, very clear from the summary judgment argument that we had with Judge Chapman in which the counterclaim was dismissed and GASA leasing's summary judgment motion was denied and my client's summary judgment motion was approved and we were awarded $50,000. It's very clear that the evidence has shown that Sherrill did perform the work. It performed work that's set forth in A through F. Now, as to GASA leasing's summary judgment argument as to why it should be reversed and why there's a genuine issue of material fact, there are questions of fact. I'm not disputing that. But they're not issues of material fact. Whether or not, for instance, David Sherrill went to a meeting at the city of Collinsville, it's irrelevant. It doesn't matter. It's not a material fact because it doesn't say in here he has to go to the meetings in order for Sherrill to get paid. So it is a disputed fact. An affidavit, Mr. Petroff, who was the principal for GASA leasing, sets forth that Sherrill Associates did not attend any meetings at the city of Collinsville. In his testimony under oath and deposition, David Sherrill said, I did go to the meetings and actually recalled the people that he sat next to. So conflicting facts, conflicting testimony by deposition and by affidavit. But it's immaterial because this contract does not say that Mr. Sherrill or anyone from Sherrill Associates had to present at the city of Collinsville meetings in order to get paid. And it doesn't allege that in the complaints. It alleges that the services were performed. So I would ask that Judge Chapman's decision in this case, awarding summary judgment in favor of my client be affirmed and that we can move on from this matter. Thank you. Thank you. Counsel. Thank you, Your Honor. I think it's necessary to look at what the whole point of this contract was. The whole point of this contract was for the defendant in this case to get a subdivision flat written up and approved. Nowhere in this record is there any indication that a subdivision flat has been drawn up and approved. The work, quite frankly. Nowhere in the contract is there a provision that Sherrill doesn't get paid unless it's approved. And wouldn't it be kind of a risky business for the engineer to make all of his payment contingent upon a city council deciding whether they're going to or not approve a subdivision? Well, that's certainly something that could have been addressed in the contract. But it wasn't, right? But I don't believe that there is anything in the contract that expressly states that the city council must do X, Y, or Z. But the contract does say that approval by the city council of a final flat is what's being contracted for. Whether that means that what's originally submitted has to be taken back and amended or changed or altered in some way, it's certainly something that would be unsurprising knowing how... Where does it say that, that approval by the city council is contemplated? I don't have a copy of the actual contract in front of me. I don't think it does say that. I mean, I can extrapolate. Of course, that's something you want. Right. But item F, what item F says is attendance at meetings with the city of Collinsville as required. Yes, I believe that is accurate. It doesn't say approval. No, it does say as required. And as noted by counsel in her portion of the oral argument, my client has submitted an affidavit that Mr. Sherrill did not attend meetings with the city council of Collinsville in this matter. So if he didn't attend any at all, that's kind of a stretch to say that he attended those as required. Let me ask you a question, Mr. Magg. Let's suppose we agree with you and we say, okay, they pled it this way. I mean, really your position is it boils down to what they're pleading to say. Yes. And they pled it wrong. And would you agree that if they had pled it, this is a monthly invoice, this is what we've billed so far, then the summary judgment would be proper? Not necessarily. I think our response to what they would have filed on summary judgment under that circumstance would have been different. And while the court may have filed, let's say, a summary judgment on certain liability might have been proper, it would have been improper to go in and say, well, I find summary judgment in the amount of $50,000 because, as is noted in the record, as noted in my brief, Mr. Sherrill doesn't even know what was paid and what was unpaid. That's the state of the record as this matter comes up on appeal. That's, I believe, at C-123. I apologize, C-182 and C-183, where Mr. Sherrill testified that he doesn't even know what amount he claims is allegedly unpaid. So even if you get to the point of finding that summary judgment in favor of the plaintiff is proper in this case, you get to whether or not, well, how do we get to uphold the award of $50,000 if the principal of Sherrill can't even articulate how much is owed or how much was not paid? So, quite frankly, I think this whole matter needs to be sent back to the trial court for a trial. Certainly, if the plaintiff in this case, after reverse and remand, assuming that's what your honors do, wants to amend the complaint, that's something that can be taken up with the trial court. And if any appropriate motions are filed at that point, they can be dealt with directly on the merits clearly unequivocally there. And the trial court, based on whatever your honors rule here, can grant, deny, send it to trial. Now, there's a whole host of theoretical outcomes depending on what happens below, but based on the pleadings and the record before the court today, summary judgment on count one of the first amended complaint is inappropriate and must be reversed. Thank you, Your Honor. Thank you, Counsel. We appreciate the witness and arguments. Counsel will take the case under advisement. We'll have a short recess and resume oral argument.